LACONIA SAVINGS BANK *v.* LACONIA.

The guaranty fund of a savings-bank is not taxable as surplus capital in the town where the bank is located.

APPEAL, from an assessment of taxes. Facts agreed. April 1, 1892, the selectmen of Laconia assessed state, county, town, and school taxes amounting to $1,216, and school-house taxes amounting to $89.60, on the sum of $64,000 as surplus capital of the plaintiffs, a savings-bank located in Laconia. The plaintiffs had a guaranty fund of that amount, which the defendants claim and the plaintiffs deny is to be deemed surplus capital of a banking institution, and subject to taxation.

*E. A. & C. B. Hibbard*, for the plaintiffs.

*Jewell & Stone*, for the defendants.

SMITH, J. Every savings-bank is required to "pay to the state treasurer, annually, on the first day of October, a tax of one per cent. upon the amount of the general and special deposits on which it pays interest, and its capital stock, less the value of all its real estate, wherever situated." Pub. Sts., c. 65, s. 5.

The real estate of savings-banks "shall be taxed to the corporation in the town where situated, as real estate of other parties is taxed." *Id.*, s. 11.

" The taxes assessed as aforesaid upon savings-banks    . . . shall be in lieu of all other taxes against the corporations, and against their stockholders and depositors on account of their interest therein." *Id.*, s. 12.

The principal statutes relating to the taxation of savings-banks, anterior to the Public Statutes, are noted in the margin.*

---

*Revised Statutes, c. 39, s. 3; c. 40, ss. 1, 4; c. 41, s. 7; c. 42, s. 3; Laws 1848, c. 737; Laws 1861, c. 2493; Laws 1864, c. 2873; Laws 1865, c. 4072; General Statutes, c. 49, s. 5, cl. 5; c. 58, ss. 12–14; Laws 1869, c. 4; Laws 1872, c. 17, s. 2; Laws 1873, c. 2; Laws 1874, c. 71; General Laws, c. 65, ss. 6–9; c. 170.

The word "accumulations," inserted in the Statutes of 1864 (*c.* 4028, *s.* 1) and in the revisions of 1867 and 1878 (Gen. Sts., *c.* 58, *s.* 12, G. L., *c.* 65, *s.* 7), disappeared in the revision of 1891. Pub. Sts., *c.* 65, *s.* 4. The report of the commissioners of revision (*p.* 187, *s.* 4) subjected the guaranty fund and undivided profits of savings-banks to the state tax. But the legislature struck out all that related to the taxation of the guaranty fund and undivided profits. Pub. Sts., *c.* 65, *s.* 4. By this action the legislature indicated their intent not to tax the guaranty fund and undivided profits. The keeping of a guaranty fund is made compulsory; and it cannot be used for dividends. Pub. Sts., *c.* 165, *s.* 16. This fact furnishes a reason for the omission of the legislature to include it with deposits for taxation. If the intent was to impose the state tax of one per cent. upon the guaranty fund and undivided profits, we should not have expected the legislature would strike out words from the commissioners' report which made the intent clear beyond controversy, and leave its intent to be gathered from such terms as "special deposits" or "capital stock," especially when other corporations are named in the same section, to which such terms may more properly be applied.

Still less is it reasonable to suppose that by striking out those words the intent was to permit towns in which savings-banks are located to impose a tax upon the fund and profits, at a rate almost certain to be much higher than the state rate, for the exclusive benefit of the towns, and whereby other towns in which depositors reside would be deprived of their proportionate shares. We discover no intent to substitute, for the uniform mode of taxation heretofore in force, a mode which would be inequitable in its operation. There is no evidence that the purpose was to subject one portion of the deposits to taxation by the state at one rate, and another portion by a single town at another rate. The reasons which led to the enactment of the provision that the towns where the depositors reside shall share proportionately in the tax paid to the state (Pub. Sts., *c.* 65, *s.* 6) are equally strong against excluding them from sharing in the tax assessed by the town.

If, however, the construction of sections 4 and 5, *c.* 65, Pub. Sts., is that the guarantee fund is taxable, it is plain that the tax is payable to the state treasurer at the rate of one per cent. The language of section 5 is,—" Every such corporation . . . shall pay to the state treasurer, annually, on the first day of October, a tax of one per cent.," etc. No authority for the assessment of such a tax is given to the town where the bank is located.

But the decisive answer to the claim of the defendants is the statute itself. Section 12 expressly provides that "the taxes assessed as aforesaid," that is, one per cent. upon deposits and upon capital stock, if any (*s.* 5), and upon real estate in the town where it is situated, as real estate of other parties is taxed (*s.* 11), " shall be in lieu of all other taxes," etc.

The statute subjecting to taxation " the surplus capital on hand of banking institutions" (Pub. Sts., *c.* 55, *s.* 6, *cl.* iv.) "in the towns wherein such banking institutions are located" (*id.*, *c.* 56, *s.* 6) was originally enacted in 1849. Laws 1849, *c.* 848. At that time the whole amount of deposits in all the savings-banks of the state was only $1,564,540.95. The common understanding has been, that the statute of 1849 was aimed at banks having a capital stock and authorized to issue bills for circulation as money; and the uniform practice has been against the taxation in the towns of any part of savings-bank deposits as surplus capital. They have no capital stock separate from their deposits, which fluctuate from day to day as deposits are withdrawn or new deposits made. In 1849 there was no guaranty fund. If there was any surplus not annually divided among the depositors, it was distributed as an extra dividend at stated periods, varying from two to five years, and undoubtedly was so inconsiderable in amount that it was omitted from property subject to taxation, as carriages are whose value does not exceed fifty dollars, or horses and cattle not over eighteen months old, and sheep unless over six months old. The guaranty fund is limited in amount to five per cent. of the deposits. Pub. Sts., *c.* 165, *s.* 16. In view of the provisions of *c.* 65, subjecting at least ninety-five per cent. of the deposits to a state tax of one per cent., which with the tax on real estate is declared in *s.* 12 to be " in lieu of all other taxes," it is not reasonable to hold that the legislature intended to authorize the taxation of the balance of the deposits, which cannot exceed five per cent. thereof, denominated in *c.* 165, *s.* 16, a guaranty fund, in the town where the bank is located, under the designation of surplus capital in *c.* 56, *s.* 6. No reason appears for taxing a part of the deposits at one rate and another part at another. In this case the rate in Laconia in 1892 was more than double the state rate.

The plaintiffs are entitled to have the

*Tax abated.*

All concurred.